**People of the State of Illinois, Plaintiff-Appellee,
v. John Palmer, Defendant-Appellant.**

Gen. No. 53,374.

First District, First Division.
February 2, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard Zulkey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial, defendant was found guilty of (1) armed robbery, and (2) aggravated battery, and he was sentenced to the penitentiary on each charge for concurrent terms. On appeal defendant contends (1) his pre-trial motion to suppress the identification testimony should have been sustained; (2) the jury was improperly instructed; and (3) the evidence was conflicting and so unsatisfactory as to raise a reasonable doubt of his guilt.

Early in the morning of October 8, 1967, at about 1:30, the complaining witness, Donald Smith, left a tavern at Madison and Francisco in Chicago. As he was walking north on Francisco Avenue toward his car, a man, whom Smith later identified as defendant, put his arm around Smith's neck, stuck something in his back that felt like a gun and said, "This is a stickup. Don't turn around." The man reached in Smith's pocket and took out $13 and Smith's wallet. Smith then hit the robber and knocked him against a building. Smith lost his balance and fell across the sidewalk. As Smith was lying on his back on the ground, his assailant fired three shots at him, two of which hit Smith in the back. Smith was taken to a hospital, where he told Police Officer Butler that his assailant was a male Negro, 5' 8" tall, about 30 years old, and maybe 190 pounds.

During the trial Smith made an in-court identification and also identified his wallet and its contents that were recovered by the police. He said that when he struck his assailant, and while he was lying on the ground, he had a clear view of his assailant's face because the streetlights were directly shining on it. Also, the assailant fired the shots at him from a distance of three or four feet, at which time Smith observed his assailant's face and said, "That's when I said I'll never forget it." He said that during the occurrence he noticed his assailant's hair was

processed and he had a goatee and very unusual blemishes on his face.

The record further shows that on October 12, 1967, at about one o'clock in the afternoon, Officers Reynolds and Chorley observed defendant and another man in an alley. One of the officers saw a bright metal object in defendant's hand which resembled a gun. When the two men noticed the police they fled up a railroad embankment and separated. After arresting both men, the officers found Smith's wallet halfway up the embankment in open view. On October 20, 1967, in the Criminal Courts Building, Smith picked out defendant from twenty-four men in a bullpen. Defendant's hair had become curly, but he still had his goatee.

Defendant testified at the trial and denied the robbery and shooting. He stated he was at home at all times on the day in question. The first time he saw the complaining witness was at the bullpen on October 20, 1967.

Initially considered is defendant's contention that his motion to suppress the identification testimony should have been sustained because (a) defendant should have been provided with an attorney at the confrontation in the bullpen, and (b) the method of identification was improper and unlawful. Defendant notes that he was arrested on October 12, 1967; the confrontation at the bullpen was on October 20, 1967; and he was indicted on October 31, 1967. Defendant contends that the confrontation at the bullpen was a critical stage of the proceedings, which required that the assistance of an attorney should have been provided him, even though he had not been indicted.

The testimony for the State at the pretrial hearing of defendant's motion to suppress the identification testimony shows: On October 15, 1967, Officer Warren Anderson informed Smith the police had a man in custody and they had recovered Smith's wallet. Officer Ander-

son showed Smith about six photographs. Smith selected a photograph as that of the defendant. On October 20, 1967, Smith went to the Felony Court with Officer Anderson and Assistant State's Attorney Neville. They then went to the Felony Court bullpen, in which there were 24 men, of which 18 or 19 were Negroes. The men were not arranged in any particular manner, nor were they wearing any distinctive dress. Smith said, "They told me that the guy was there in the lockup and if I could point him out. . . . I pointed at the defendant, John Palmer," who was standing "in the very back of the lockup." Smith made the remark, "That is the one." Officer Anderson called defendant over and asked him his name, and defendant replied, "John Palmer."

At the pretrial hearing Officer Anderson and Assistant State's Attorney Neville substantially corroborated Smith's testimony as to the bullpen confrontation on October 20, 1967. Both testified there were 24 men in the bullpen, and Smith pointed to a man in the back of the bullpen. Anderson also testified that on October 15, and after Smith selected the picture of defendant Palmer, he then told Smith that the picture selected by Smith was of the man found with Smith's wallet. On October 20, and before the bullpen confrontation, Anderson showed Smith two photographs, and Smith again selected the same picture.

Defendant argues "that at any stage from the time defendant was in custody," assistance of counsel should have been provided him, and "such assistance was not afforded to the defendant nor was he advised in any manner of his constitutional rights." Defendant further argues that "a photograph of the accused should never be shown prior to a confrontation"; also, that there never was a lineup and only a "makeshift confrontation." Defendant also argues that Smith's statement "that he was looking in defendant's face while he was being shot

is a brazen lie," because the shots could not have been in his back while Smith was looking at defendant's face.

Defendant's authorities on the bullpen identification issue include Stovall v. Denno, 388 US 293; United States v. Wade, 388 US 218; Gilbert v. California, 388 US 263, and Wall's Eye-Witness Identification in Criminal Cases, pp 8, 68, 70, 74, 75, 76, 77. A review or discussion of these authorities is unnecessary here because we are not persuaded that the identification guidelines stressed in these authorities should be applied here. It is not disputed that this was a preindictment identification, and that defendant did not have counsel at the bullpen confrontation, nor was he informed that he was entitled to the assistance of counsel.

We think the determinative question here is whether the bullpen identification "was so unnecessarily suggestive and conducive to mistaken identification that the defendant was denied due process of law." People v. Palmer, 41 Ill2d 571, 573, 244 NE2d 173 (1969).

After examining the totality of the circumstances surrounding the bullpen confrontation, we find no unfairness here which deprived defendant of due process of law. Neither the showing of the photographs to Smith prior to the bullpen confrontation nor the bullpen procedure were improper or suggestive. In fact, we think the bullpen confrontation was more fair and less suggestive than a lineup. Also, we believe the testimony shows that Smith had ample opportunity to observe defendant at the time of the occurrence, which provided an adequate independent basis for the in-court identification. People v. Palmer, p 574; People v. Cook, 113 Ill App2d 231, 237, 252 NE2d 29 (1969).

We conclude that although we believe the bullpen identification was at "a critical stage of the proceedings," which might have entitled defendant to the presence of counsel, even though he had not then been

indicted, the "totality of the circumstances" surrounding the clear and convincing identification by Smith, including the photographs and bullpen confrontation, was not fundamentally unfair or prejudicial to defendant and did not deprive defendant of due process. We find the motion to suppress was properly denied.

██ Next considered is defendant's contention that the jury was improperly instructed. This contention is based on the premise that it was error for the court to refuse defendant's instructions Nos. 12 and 15. We have examined the instructions given to the jury and find that considered as a whole, the given instructions fully and fairly announce the law applicable to the theories of the case, and that the jury was adequately instructed. We find that the court did not abuse its discretion in refusing to give defendant's instructions Nos. 12 and 15. People v. Turner, 82 Ill App2d 10, 27, 226 NE2d 667 (1967).

██ ██ Finally considered is defendant's contention that the evidence was so conflicting and so unsatisfactory as to raise a reasonable doubt of his guilt. We have examined the evidence in the light of defendant's contentions and authorities and conclude the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. The victim Smith had ample opportunity to observe his assailant, and his in-court identification was positive and consistent throughout and sufficient to convict, even though the testimony was contradicted by the accused. (People v. Miller, 30 Ill2d 110, 113, 195 NE2d 694 (1964).) Also, the finding of Smith's wallet within the vicinity of defendant's arrest was substantial corroboration of Smith's identification of defendant as his assailant. (People v. Bryan, 27 Ill2d 191, 194, 188 NE2d 692 (1963).) The conflicts in the evidence of the State were not such as to raise reasonable doubt as to defendant's identity or guilt.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.