THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD SMALLEY, SR., Defendant-Appellant.

(No. 72-25; ▇▇▇▇▇▇▇▇▇▇

Second District—March 15, 1973.

Paul Bradley and Ralph Reubner, both of Defender Project, for appellant.

Charles Marshall, State's Attorney, of Sycamore, (James W. Jerz, of counsel,) for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant, Donald Smalley, Sr., was tried before a jury in the circuit court of DeKalb County and found guilty of the attempted murder of

Lawrence Williams and of aggravated assault upon April Backstrom (charges of aggravated battery and aggravated assault upon Lawrence Williams were dropped by the State at the close of the evidence). He was sentenced to 3 to 20 years on the charge of attempted murder and 1 to 5 years on the charge of aggravated assault, to be served concurrently.

Defendant appeals, contending (1) that the indictment failed to state the offense of aggravated assault; (2) that he was not proved guilty of attempted murder beyond a reasonable doubt; (3) that the court erred in the receipt of evidence and the giving of instructions; (4) that the court and State improperly emphasized defendant's prior convictions; and (5) that the State's closing argument, and a remark made by the court during that argument, were prejudicial.

Lawrence Williams testified for the prosecution that on January 16, 1971, he called defendant from Chicago and was told to come to the Smalley home in Clare, Illinois, to collect a debt. He left in company with Alice Backstrom, bringing a .38 caliber pistol loaded with six bullets which he placed in a zippered briefcase on the front seat of his car. He explained that he did not want to leave it in his apartment because of a previous burglary.

When he arrived at the Smalley residence, after accidentally driving a block past the house, he saw a pick-up truck in the driveway but no cars. He had started to pull in front of the garage to back out, thinking that no one was home, when they saw defendant in the garage doorway about 4 or 5 feet from the hood of the car. Williams started to get out of his car but got back in when Miss Backstrom yelled that defendant had a gun.

Williams testified that defendant started shooting a rifle, with the first shot going into the left hand door post and other shots through the windshield. Williams said he then pulled his gun from the case, and returned the fire through the windshield from a lying position. He then was able to back out of the driveway. At the time, Williams was on probation for burglary, and was not supposed to have a gun in his possession. He was granted immunity to testify.

April Backstrom testified for the State that she lived with Williams, and that he normally took the gun with him when leaving his apartment. Essentially she corroborated Williams' version of the incident.

Detective Harold Eckhardt and Police Captain Melvin Shaw testified that one bullet hole was found above the door frame of the garage, about 7½ feet above the ground. Four empty rifle cartridges were found on the floor of the garage. The inside and back wall of the garage were checked, but no other bullet holes were found. Tire tracks from the left

front wheel of Williams' car were approximately 16 feet from the garage door. Glass and a blood-like substance were found 16 feet from the door of the garage.

Detective Sergeant James Laben testified that Donald Smalley made a statement on the evening of January 16, 1971, in which he said that Lawrence Williams claimed that defendant owed him money, and had made numerous calls with reference to it. He had called the previous Wednesday and told defendant's wife that defendant had better send the money or he would send someone to collect it. The last call had been on the morning of the incident, when Williams said "he would be out today to get some money or some ass." When Williams arrived, he parked where he could see the house, and defendant took his rifle to the garage. When Williams pulled up, he stepped out of the car and fired once at defendant. Defendant grabbed his rifle and returned a shot. Williams got back in the car and fired five shots through the windshield. Defendant fired three more shots, and Williams backed out of the drive-way and took off. Defendant returned to the house and called the Sheriff.

Fred Aubey, a ballistics expert, testified that he examined the windshield of Williams automobile and determined that the six holes on the passenger side of the windshield were caused by a projectile originating from within the vehicle, and the black marks on them were similar to powder burns from the close range firing of a weapon. The three holes in the lower center of the windshield had no powder patterns, and originated from outside the vehicle. There was also a penetrating hole on the driver's side in the lower corner. He agreed that the holes could have been produced by almost anything projected at a high velocity, but said that they had the physical appearance of bullet holes. He could not say whether the six holes on the passenger side were made by one gun, or whether they were made in rapid succession.

Donald Smalley, Sr., the defendant, testified on his own behalf that Williams called him on the morning of the incident and said he was coming to defendant's house for the money he claimed defendant owed him. Defendant denied owing him money. After the call, defendant called the Sheriff in Plymouth, Indiana, and learned Williams was wanted for nonpayment of child support. Defendant then called the DeKalb Sheriff's Department and told them a man wanted in Plymouth was coming to his house, and asked if they would apprehend him. When Williams arrived, he drove past the house, turned around, came back, and parked for 8 to 10 minutes at a spot from which the house was visible. When Williams began to drive toward the house, defendant yelled for his wife to call the Sheriff. Williams pulled into

the driveway, drove near the garage, and stopped 15 to 18 feet away. He stepped from the car with a pistol in his hand, and seeing this, defendant dove for his rifle and told Williams to "get out of there". Williams fired a shot at defendant from outside the car, and defendant returned the fire. Williams then got back in the car and fired four more shots through the windshield. Defendant fired three more shots through the windshield of the car. After the battle, defendant phoned the DeKalb Sheriff's Department.

Leota Smalley, the defendant's wife, testified that when Williams arrived, he waited for 10 minutes on the side of the road, pulled his car onto the driveway, and stepped out. She heard a shot and saw him get back in the car. She saw nothing further because defendant hollered for her to call the sheriff, but she heard four other shots.

Nancy Smalley, defendant's daughter-in-law, testified that she saw Williams' car go by, come back, and stop for five or ten minutes. She said Williams then drove quickly into the driveway, jumped out before the car had stopped, and shot a gun, making a "pinging" sound. There was then a loud shot, and Williams jumped back in the car. She said both the man and woman in the car were shooting, and saw five shots inside the car. On rebuttal, a detective testified that, questioned after the shooting, she had said only that she heard a noise, went to the window and saw a ball of fire in the car, and went into the living room.

Patrol Sergeant George Shaw testified in rebuttal that he was in charge of receiving all calls at the DeKalb Sheriff's Department on the day of the incident, and there was no call from Donald or Leota Smalley concerning Williams before the incident took place.

Defendant's first contention is that the indictment, charging him with aggravated assault, is insufficient in that it does not set forth the nature and elements of the offense charged. (Ill. Rev. Stat. 1971, ch. 38, par. 111—3(a).). The indictment charged that defendant "committed the offense of Aggravated Assault in that he, without lawful authority, assaulted April Backstrom with a deadly weapon, namely a gun * * * ."

■■ The purpose of an indictment is to apprise a defendant of the exact crime with which he is charged, so that he may prepare his defense, and may plead the judgment in bar of a subsequent prosecution for the same offense. (*People v. Grieco* (1970), 44 Ill.2d 407, 409, U.S. cert. den., 400 U.S. 825; *People v. Harvey* (1972), 53 Ill.2d 585, No. 45078.) Whether these objectives are met must be determined by the substance of the charge, rather than by the technicalities of the language. (*People v. Dzielski* (1970), 130 Ill.App.2d 581, 585-586.) This indictment contained the statutory language (Ill. Rev. Stat. 1971, ch.

38, par. 12—2(a)(1)), and further stated that the instrument used was a gun. In addition, on defendant's motion, a bill of particulars was provided setting out that the assault was perpetrated by defendant's shooting of the gun. The indictment was sufficient to support a plea of double jeopardy should the need arise, and defendant was provided with adequate information to prepare his defense. See *People v. Fulton* (1967), 84 Ill.App.2d 280, 283, U.S. *cert.* den., 390 U.S. 953. See also *People v. Jones* (1973), 53 Ill.2d 460, No. 45144.

■■ Defendant next contends that he was not proved guilty of attempted murder beyond a reasonable doubt. He argues first that the State has not proved that he, rather than Williams, fired the first shot, and thus that he was not acting in self-defense. The testimony of those present as to who fired the first shot is contradictory. Lawrence Williams and April Backstrom stated that Williams was unarmed when he left the car and was fired upon, and that Williams then fired all shots from within the car. Defendant and Nancy Smalley said that Williams had a gun in his hand when he stepped from the car, and fired a shot at defendant before returning to the car, causing defendant to fire back. The ballistics expert's testimony indicating that six shots were fired from within the car supports the testimony of the prosecution witnesses. Nancy Smalley's testimony that two guns were fired from inside the car is unsupported by other testimony, and was discredited by the officer's statement that she did not say this on the night of the incident. The credibility and weight to be given to the testimony of witnesses is in the first instance a question for the jury, and its finding will not be disturbed unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Nicholls* (1970), 44 Ill.2d 533, 540.) The jury could properly conclude from the evidence that defendant fired the first shot.

Defendant further argues that it was not proved beyond a reasonable doubt that he acted with intent to commit the crime of murder. In this regard, he argues that the court erred in not allowing him to testify as to his intent on direct examination. The court ruled that such testimony would be self-serving, and that it was up to the jury to determine his intent from the facts placed in evidence. The court also ruled that he could not testify as to whether he believed Williams meant to harm him, as this too was a question for the jury.

■■ In criminal cases where the intention, motive, or belief of the accused is material to the issue, he is allowed to testify directly to the fact. (*People v. Biella* (1940), 374 Ill. 87, 89; *People v. Johnson* (1969), 108 Ill.App.2d 150, 159.) The circumstances under which the act in question was done usually serve to manifest to a great degree the intent

of the actor and may overcome his declaration as to his intention, but he has the right to testify as to his intention and to have the circumstance surrounding the act considered in connection with his testimony. ■■■ Defendant was erroneously denied the opportunity to directly testify to his intention and belief. However, such error was harmless beyond a reasonable doubt, since defendant did testify as to these elements on cross-examination and on questioning by the court. (*People v. Peters* (1914), 265 Ill. 122, 130; overruled on other grounds, 4 Ill.2d 399; *Wohlford v. People* (1894), 148 Ill. 296, 300. Contra, *People v. Arcabascio* (1947), 395 Ill. 487, 500.) On cross-examination, defendant testified that he wasn't trying to hit Williams, and answered affirmatively questions to the effect that he was only trying to scare Williams. He further stated that he called the police in the morning because "he knew what the guy would do if he come to my house." He said he didn't tell his wife that he was in fear of his life because he "didn't want to scare her to death", but that he hollered for his wife to call the Sheriff when Williams started coming toward the house. On questioning by the court as to why he didn't tell the Sheriff anything about fear in the morning call, he said he didn't know for a fact that the man was armed until he saw the gun.

■■ Defendant contends that the court erred in not allowing defense witness Leota Smalley to testify as to the reputation for violence of Lawrence Williams. However, there was no foundation laid which qualified her to give reputation testimony. Evidence of reputation, to be admissible, must be based on contact with the subject's neighbors and associates rather than upon the personal opinion of the witness. (*People v. Moretti* (1955), 6 Ill.2d 494, 523-524, U.S. *cert.* den., 356 U.S. 947.) Mrs. Smalley testified only that she was well acquainted with Williams, that he used to come to the truck stop where she worked, and that he visited the Smalley residence at Clare with his wife. Nowhere does she state that she had any knowledge of his reputation in the community. In fact, defense counsel argued that "* * * he has been traveling over the countryside. His reputation is not clear. People don't know him * * *. He didn't stay home long enough to establish a reputation * * *. He is largely a transient." The court was correct in refusing to allow such testimony. The fact that the court erroneously stated that Mrs. Smalley could testify to specific threats in no way prejudiced the defendant. See *People v. Myers* (1968), 94 Ill.App.2d 340, 350.

■■ The defendant next contends that emphasis of his prior convictions by the court and by the State constituted reversible error. We do not agree. On direct examination, defendant testified that in 1953 he got one to three years for issuing checks with insufficient bank funds in Ohio;

that in 1943 he was convicted for transporting stolen vehicles outside the State line, and sentenced to 4 years, of which he served 2½ years; that he was convicted for attempting to break jail; and that he had a 1965 felony conviction in Plymouth, Indiana. As to this last conviction, defense counsel asked, "That was the one you mentioned about checks?" Defendant answered "Yes". The court then interrupted, saying "I thought he said Ohio." It was clarified that these were two separate felony convictions. The court then asked:

"You have four felony convictions?

Answer: Yes, sir.

The Court: Ohio, two federal ones, and Plymouth?

Answer: Yes, sir.

The Court: Go ahead."

The court's questions showed no evidence of disbelief or of an attempt to discredit the witness, but merely served to clarify the nature and number of his convictions. Defendant's cases are distinguishable on their facts. *People v. Martin* (1966), 66 Ill.App.2d 290; *People v. Walton* (1969), 118 Ill.App.2d 324; *People v. Thomas* (1972 Abst.), 3 Ill.App.3d 761.

On cross-examination, the prosecutor questioned the defendant about the felonies to which he had testified, and then asked whether defendant had ever been placed on probation in Ohio. Over defense counsel's objection, defendant was allowed to answer that he had been, for bad checks. The prosecutor also asked about defendant's acquaintance with the Sheriff of Plymouth, Indiana, and over defense counsel's objection that the question implied that he was arrested, defendant answered that he had been there a couple of times since Harvey Phillips was elected, but that Phillips was not the Sheriff at the time that he was arrested in Indiana.

■■■ The defendant now contends there was error in the prosecutor's questioning. He argues first that introduction of prior convictions to impeach must be by the record or an authenticated copy of the conviction, rather than by cross-examination. (*People v. Parish* (1972), 6 Ill.App.3d 587, 590.) However, it was the defendant who opened the door by testifying as to his prior convictions. The defendant cannot now claim error or prejudice. (*People ex rel. Walker v. Pate* (1972), 53 Ill.2d 485; *People v. Nastasio* (1963), 30 Ill.2d 51, 58, U.S. *cert.* den., 377 U.S. 911; *People v. Scott* (1967), 82 Ill.App.2d 109, 117.) Defendant further argues that even if the prosecutor's questioning regarding the previously testified to convictions was proper, his questions as to defendant's probation in Ohio and association with a Sheriff in Indiana were improper, since credibility of a witness cannot be impeached by

anything less than infamous crime convictions. It was proper for the prosecution to question defendant as to a conviction not previously testified to, since by testifying on direct examination that he had four felony convictions, defendant inferred that he had no other convictions, and opened the door to impeachment of this testimony. (*People v. Bey* (1969), 42 Ill.2d 139, 147.) Furthermore, since defendant had already testified to four convictions, the disclosure of another conviction would not have the prejudicial effect which would exist if there were no earlier proof of other criminal conduct. (*People v. Bey* (1969), 42 Ill.2d 139, 147.) In the context shown by the record, the prosecutor's question as to defendant's acquaintance with the Plymouth, Indiana, Sheriff did not imply that he had been arrested.

Defendant next contends that the court failed to properly instruct the jury on the justifiable use of force. Defendant tendered three instructions on justifiable use of force: one on use of force in defense of self; one on use of force in defense of dwelling; and one on use of force in defense of property. After much discussion, the court ordered that the instructions on defense of self and defense of property be given; but that the one on defense of dwelling be refused. However, the court became confused as to the number of the instructions and, while intending to refuse the defense of dwelling instruction, inadvertently refused I.P.I. 24.08, which was the defense of property instruction. The result was that only the instruction on defense of self was received by the jury.

Defendant is entitled to the benefit of any defense shown by the evidence. (*People v. Khamis* (1952), 411 Ill. 46, 53; *People v. Boothe* (1972), 7 Ill.App.3d 401, 403.) However, all testimony for the defense was to the effect that Williams stepped from the car and immediately shot at defendant. There is no evidence that Williams threatened defendant's home or property, or that defendant acted in defense of anything except himself. In addition, any error in refusing these instructions would be harmless due to the giving of the self-defense instruction, which put the issue of justifiable use of force in front of the jury. Furthermore, to preserve this issue for appeal, defendant should have specifically informed the trial court of its mistake which kept the defense of property instruction from being given. The court would then have had an opportunity to rectify its oversight. Defendant's general contention in the motion for new trial that the court erred in giving and refusing instructions was not sufficient to inform the court of its error. A defendant cannot assign error to that which he acquiesced in and gave the court no opportunity to correct. *People v. Jones* (1968), 107 Ill.App.2d 1, 8.

Defendant next argues that he was deprived of a fair trial by

prejudicial comments of the prosecutor during closing argument. None of the alleged errors were objected to, nor were they specifically raised in defendant's motion for a new trial. Since the arguments in our view were not of a nature which would deprive defendant of a fair trial, we do not consider them. *People v. Bambulas* (1969), 42 Ill.2d 419, 425, U.S. *cert.* den., 396 U.S. 986; *People v. Ewell* (1972), 5 Ill.App.3d 443, 448, 449.

Defendant's final contention is that a comment made by the court during the prosecutor's closing argument constituted reversible error, in that it indicated a prejudicial attitude toward the defendant:

> "STATE'S ATTORNEY: * * * The daughter-in-law. She says April Backstrom had a gun, too. She said there were balls of fire. They must have been shooting blanks because there are, count them, one, two, three, four, five, six, from the .38, and four from the 308 deer rifle, and one almost got Williams. There were only ten shots. What else was he trying in this obvious attempt to scare them?
>
> THE COURT: I hope I don't scare him."

■■ While no objection was raised, the conduct of a trial judge is of such importance that the contention should not be deemed waived. *People v. Sprinkle* (1963), 27 Ill.2d 398, 399-401.

■■ It is true that there is a high duty on the court to avoid giving any impression to the jury that would in any way influence their verdict. (*People v. Walinsky* (1921), 300 Ill. 92, 97; *People v. Henderson* (1966), 72 Ill.App.2d 89, 93-94.) However, the court's comment is so ambiguous as to have had no effect upon the jury. It should not be deemed prejudicial error.

We affirm the judgment below.

Judgment affirmed.

T. MORAN and GUILD, JJ., concur.