THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE J. DAVIS, a/k/a WILLIAM ROBERTSON, Defendant-Appellant.

(No. 56768;

First District (3rd Division)—May 2, 1974.

James J. Doherty, Public Defender, of Chicago (Bernard L. Schwartz and Ian Levin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Lawrence Davis, was convicted by a jury of aggravated battery (Ill. Rev. Stat. 1969, ch. 38, par. 12—4) and armed robbery (Ill. Rev. Stat. 1969, ch. 38, par. 18—2). He was sentenced to concurrent terms of 1 to 5 years for the aggravated battery and 7 to 15 years for the armed robbery.

The defendant raises four issues, two of them pertaining to identification testimony by the victim of the crimes: first, that it was error not to suppress this testimony because the pre-trial identification procedure was highly suggestive; second, that the identification was insufficient to prove

his guilt beyond a reasonable doubt. His third and fourth issues concern the denial of due process: that he was prevented from receiving a fair trial by the trial court's permitting the prosecutor, over objection, to elicit testimony from him that an out-of-court identification had taken place, and by prejudicial opening remarks to prospective jurors made by the court itself.

At approximately 11 P.M. on July 8, 1970, J. D. Dodd left work at the Western Electric Company and walked to his car which was parked nearby in a brightly lighted alley. As he approached his car, two men confronted him, one of them announcing, "This is a stickup." One carried a sawed-off shotgun, the other a pistol, which appeared to be a .38. The man holding the pistol stood about 4 or 5 feet away and, as Dodd turned to face the alley wall, he fired, the bullet creasing Dodd's scalp high on the forehead. Dodd fell to the ground, dazed. The attackers then roughly searched through his clothing, removed his wallet, and fled. The wallet contained $520 in cash, a Goldblatt's Department Store charge card and other items including additional identification. Dodd was taken to a hospital, treated and released the same evening. He was questioned by the police but could not supply a description of either assailant.

The following morning Dodd called Goldblatt's to inform them of the theft of his credit card. That evening, the defendant, in the company of another person, entered a Goldblatt store and attempted to purchase some sweaters with Dodd's card, signing Dodd's name to a sales slip. Security personnel detained Davis in the store's credit office until the police arrived. He was then arrested and taken to a police station. However, a security officer assigned to remain with Davis' companion elsewhere in the store permitted him to leave the premises. Shortly after Davis' arrest, Dodd was escorted to the station by officer Erjavec of the Cicero police force and he identified Davis in a five-man lineup as the man who had shot and robbed him.

Davis moved to suppress his identification by Dodd, the sole occurrence witness. At the hearing, the testimony conflicted on the question whether Dodd was told about Davis prior to pointing him out in the lineup. Dodd testified that he received a phone call from a police sergeant who informed him that Lawrence Davis who worked at Western Electric had been arrested in possession of his identification papers and credit card. But he stated that at the lineup itself the five men whom he viewed did not speak their names, and he denied that the police had in any manner divulged Davis' identity to him, or that he had based his identification on any factor except his recollection of the robbery. Officer Erjavec, who was present during the lineup, contradicted Dodd; as he remembered the procedure, each of the five men gave his name as he stepped forward

from the line. The defendant agreed with Erjavec. The motion to suppress was denied without explanation or findings of fact.

At the trial Dodd again identified Davis as one of the two men who had accosted him. On cross-examination, he explained that he had been unable to furnish the police with a description of either assailant because the robbery had happened so quickly. However, he remained adamant in his identification and said Davis had shot him at a very close range. Notwithstanding the court's earlier, unqualified rejection of the defense motion to suppress, the prosecution did not examine Dodd before the jurors concerning the out-of-court identification, nor was that subject touched upon by the defense in its cross-examination.

Davis offered an alibi to explain his whereabouts at the time of the robbery. He related that around 11 P.M. on that night he was at the home of Juanita Flowers, and that Sylvester Smith, his mother Mrs. Smith, and a Miss Giles were present. None of these persons appeared in court to corroborate his story. He explained that Mrs. Smith and Miss Flowers could not remember well enough to help, and Miss Giles had moved to Georgia. His counsel reported that although Sylvester Smith had agreed to testify, he had disappeared shortly before the trial began. Out of the presence of the jury the court reminded Davis of the availability of compulsory process to produce the witness, but the defense rejected this proffered aid.

To explain his possession and attempted use of Dodd's credit card on the day following its theft, Davis testified that on July 9, 1970, he met an individual known to him only as "Roger," who offered to let him charge some items to his account at Goldblatt's in exchange for cash. On cross-examination, he said that the possession by "Roger" of the credit card in the name of J. D. Dodd had not aroused his suspicion. Over objection of his counsel, the State was permitted to draw from Davis the fact that after his arrest he had participated in a lineup at which Dodd was present. He was not asked whether Dodd had at that time identified him as one of the robbers.

The defendant's first contention, that the admission of Dodd's in-court identification was fundamentally unfair, is predicated on the proposition that the pre-trial identification procedure was so highly suggestive that the attendant danger of his mistaken identification was great.

■■ If an accused can substantiate a claim that the circumstances of his pre-trial identification were conducive to irreparable mistaken identification, the evidence of identification, both in and out of court, is not admissible. (*Stovall v. Denno* (1967), 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967; *People v. Blumenshine* (1969), 42 Ill.2d 508, 250 N.E.2d 152.) The out-of-court identification is inadmissible per se; the in-court identifi-

cation becomes inadmissible unless the State can establish that the identification had an origin based on observations by the witness independent of and uninfluenced by the tainted proceeding. (*People v. Lee* (1969), 44 Ill.2d 161, 254 N.E.2d 469.) If the court is satisfied that overly-suggestive procedures were not employed in the pre-trial confrontation, testimony about that confrontation may be received and its weight determined by the trier of fact.

As in *People v. Williams* (1972), 52 Ill.2d 455, 288 N.E.2d 406, and *People v. Jones* (1972), 6 Ill.App.3d 669, 286 N.E.2d 87, but unlike *Stovall* and *Blumenshine,* this case does not involve a clear example of overly-suggestive lineup procedures. The evidence did not convincingly demonstrate that the procedure was suggestive and that the defendant's identification deprived him of his constitutional right to due process of law. (*People v. Brown* (1972), 52 Ill.2d 94, 285 N.E.2d 1.) Dodd said he knew only that a man named Davis was in custody, but did not know which of the men he viewed was that person; that the men were of similar size, shape and color and did not identify themselves. Erjavec thought that the participants in the lineup did give their names, but agreed with Dodd that all five men presented for viewing were of the same general appearance. The defendant stated that he gave his name at the lineup. The defendant bore the burden of persuading the court that the procedure was unfair. The judge was not convinced, and denied the motion to suppress the identification testimony. His denial of the motion implies that he must have disbelieved Davis and discredited Erjavec's memory. The judge's decision to accept Dodd's testimony must be upheld unless it can be said to be clearly unreasonable. (*People v. Haskell* (1968), 41 Ill.2d 25, 241 N.E.2d 430.) We cannot say that his resolution of the evidentiary conflict was contrary to reason. Dodd attended only the one lineup, in which he was intensely involved, so his memory of what took place could be expected to have greater reliability than that of the police officer, who had attended other lineups in the interim before trial. Davis' self-serving corroboration of Erjavec's recollection was, understandably, discounted by the judge. Accepting the testimony of Dodd, as the court did, what had taken place was the classically approved identification proceeding, in which the complainant selected the defendant from a group of similar appearance, all of the participants being unknown to the witness. At the trial, the defendant's counsel was not deprived of his right to question Dodd's credibility. He vigorously exploited any defects in Dodd's memory, drawing from him admissions of his inability to describe his assailants to the police, and of his attenuated opportunity to observe them. The weight to be accorded the complainant's identification in light of those admissions

was an issue for the trier of fact. *People v. Bates* (1973), 9 Ill.App.3d 882, 293 N.E.2d 358.

■■ In a related point, the defendant argues that, conceding the admissibility of the identification testimony, it was insufficient to establish his guilt beyond a reasonable doubt. Positive and credible identification by one witness is sufficient to support a conviction (*People v. Green* (1969), 118 Ill.App.2d 36, 254 N.E.2d 663) even in the face of alibi testimony by a greater number of witnesses. (*People v. Catlett* (1971), 48 Ill.2d 56, 268 N.E.2d 378.) Davis produced no witnesses at all to support his alibi. Moreover, Dodd's identification testimony did not stand alone. Davis was arrested within a day of the crime, in possession of the fruits of that crime. A conviction can be sustained upon circumstantial evidence as well as direct evidence if it is of such a convincing nature that it satisfies the jury of the defendant's guilt beyond a reasonable doubt. (*People v. Palmer* (1970), 120 Ill.App.2d 471, 257 N.E.2d 172; *People v. Belousek* (1969), 110 Ill.App.2d 442, 249 N.E.2d 693; *People v. Lofton* (1965), 64 Ill.App.2d 238, 212 N.E.2d 705.) The facts of *People v. Palmer* are especially analogous. Upholding an armed robbery verdict, the court there held that finding the victim's wallet within the vicinity of the accused's arrest, 4 days after the robbery, substantially corroborated the victim's identification of the accused as his assailant. Here the defendant had actual possession of the victim's stolen belongings less than 24 hours after the robbery. This incriminating evidence, plus the victim's unshakable identification, established the defendant's guilt beyond all reasonable doubt.

On direct examination the defendant testified to his arrest at Goldblatt's and stated that he had not posted bail until 5 months afterward. The prosecutor then drew from him the admission that he had seen Dodd at a lineup after his arrest. The defendant argues that this question exceeded the scope of direct examination and prejudiced him by rehabilitating the complaining witness, whose in-court identification had been undermined by his acknowledgment that he did not describe his attackers to the police. The State replies that the question was proper cross-examination, and that in any event the defendant was not prejudiced by the inquiry.

■■ Cross-examination should be limited to matters brought out on direct and it is improper to question a witness concerning irrelevant matters for the purpose of contradicting his testimony. (*People v. Kirkwood* (1959), 17 Ill.2d 23, 160 N.E.2d 766.) At the same time, it is competent to develop all the circumstances within the knowledge of a witness which qualify his direct testimony, even if, strictly speaking, the subject introduced is new and one which should be part of the cross-examiner's own

case. (*People v. Provo* (1951), 409 Ill. 63, 97 N.E.2d 802.) It is for the trial judge to determine the permissible scope of cross-examination and his ruling will not be disturbed unless it constitutes a clear abuse of discretion, leading to manifest prejudice to the defendant. (*People v. Nugara* (1968), 39 Ill.2d 482, 236 N.E.2d 693, *cert. denied,* 393 U.S. 925; *People v. Clark* (1968), 96 Ill.App.2d 247, 238 N.E.2d 220.) The court accepted the assistant State's Attorney's explanation that once the defendant testified to his arrest and the long delay in posting bail, it was proper to seek further explanation of the 5-month period of custody. The court did not abuse its discretion in overruling the objection to the prosecutor's question.

■■ Furthermore, the defendant has not shown the prejudice requisite for reversal. The State's question only brought out the fact that he had seen Dodd at the lineup, not that he had been identified. The defendant argues that the logical inference was that identification had indeed taken place, and that this was aggravated by the fact it came from the defendant himself, thus treading perilously close to his rights against self-incrimination. But the jury might easily have concluded from the State's forbearance that he had not been identified at the lineup. It must be remembered that the court had already ruled that the identification testimony was admissible—the State had merely chosen not to use it. Thus, the inference potentially most damaging to the defendant could scarcely have been prejudicial; it amounted to no more than the truth, from a competent source, on a relevant matter. *People v. Smith* (1969), 105 Ill.App.2d 8, 245 N.E.2d 23, relied on by the defendant, is not pertinent to the facts of this case. It concerned erroneously admitted hearsay testimony which was used to strengthen an identification.

While addressing prospective jurors, the judge commented:

> "During the course of the trial, the Court will first hear motions by the lawyers outside of your presence, in order to determine the admissibility of evidence. This procedure should have no significance to you as jurors, because the Court is properly asked to make rulings before evidence may be offered or excluded, and it would be improper to allow the jury to hear it if it should be excluded."

The defendant's final assertion of error is that this comment led the jury to believe there was inculpatory evidence which would be withheld from them, thereby prejudicing his case and denying him due process of the law. He bases this assertion on speculation that some of the jurors must have been aware of, and opposed to, processes in the law which to laymen appear to exclude evidence relevant to guilt on highly technical grounds; that therefore they would construe the comment to imply that certain evidence of the defendant's guilt would actually be withheld from them.

He emphasizes that despite a long recess in the trial, taken to hear motions, no evidence actually was suppressed, thus making the hypothesized suspicions of the jurors wholly unfounded in fact.

■■■■ The defendant bases his claim of error on a comment which, though perhaps unnecessary to a proper comprehension by the jurors of their duty, did no harm. It contained only a neutral reference to "motions by the lawyers," thus encompassing both prosecution and defense. Remarks do not constitute error if they do not discriminate against an accused. (See *People v. Calcaterra* (1965), 33 Ill.2d 541, 213 N.E.2d 270; *People v. Smalley* (1973), 10 Ill.App.3d 416, 294 N.E.2d 305.) The trial judge did not intimate which party's evidence—if any—might be excluded. It is only through a tortuously speculative chain of inference that the defendant deduces discrimination from so innocuous a comment. Even if we could agree with his reasoning, this isolated, inconsequential comment must be evaluated for its effect within the context of the judge's behavior throughout the remainder of the trial. (*People v. Winstead* (1967), 90 Ill.App.2d 167, 234 N.E.2d 175.) The whole record reveals that, far from seeking to associate trial delays with efforts by the defense counsel to suppress evidence, the judge went out of his way to avoid such an implication. He went so far as to personally assume responsibility for interruptions and delays, citing the court's other pressing business. The challenged comment cannot be construed as error.

The judgment is affirmed.

Affirmed.

McNAMARA, P. J., and McGLOON, J., concur.