THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD WEATHERSPOON, Defendant-Appellant.

(No. 59343;

First District (5th Division)—June 7, 1974.

James J. Doherty, Public Defender, of Chicago (Daniel Miranda, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Barry Rand Elden, and Michael F. Baccash, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was indicted for the crimes of burglary and armed robbery. Tried by the court sitting without a jury, a directed finding of not guilty was entered on the armed robbery charge. He was, however, found guilty of burglary and sentenced to a term of from 3 to 8 years.

On appeal defendant contends that (1) the State's proof was so unsatisfactory that it created a reasonable doubt as to his guilt; (2) it was error for the trial court not to strike testimony concerning unrelated criminal conduct; and (3) the minimum sentence exceeds that allowable under the Unified Code of Corrections.

On the morning of August 26, 1972, the apartment of Pauletta Kyle was burglarized. Four days later police officers investigating the burglary seized defendant at his girl friend's apartment, and he was charged with the crime. Prior to trial the defense moved to quash the arrest. Following an evidentiary hearing, the motion was denied.

At trial Ms. Kyle testified for the State that on the morning in question she lived with her mother and son in a first-floor apartment located at 6827 South Dante in Chicago. At 4:50 A.M. her alarm rang, awakening her. She turned it off and fell back asleep. Approximately 25 minutes later something woke her again. She got out of bed and was walking out of her bedroom door when she bumped into someone. She said, "Mama," and a man's voice responded, "Be quiet and get back in bed, you won't get hurt." When she first bumped into the man, she did not get a look at him since he was shining a flashlight in her face. The apartment was in darkness. She got back into bed. Her mother, Hazel Jones, had gotten out of bed and had come into the hallway. The man told her to "get into bed with your daughter." The bed stood near the bedroom door. The flashlight the man was carrying was still on; she could not tell if he had anything else in his hand. He went through her purse and took a knife out of it. She identified a knife that was found in the room where defendant was arrested as being the knife that the intruder had taken out of her purse. He ordered Mrs. Jones to get her purse which she said was in a back room. He accompanied her out of the bedroom, turned on the hall light and then attempted to cut the telephone cord with the knife. At this time he was about three feet from Ms. Kyle. He positioned himself so that he could see both Ms. Kyle in the bedroom and her mother in the dining room. He ordered Mrs. Jones to get both of her purses and then took them from her. He knelt beside the bed and went through the purses. Ms. Kyle could not see him while he was doing this. He then said, "[Y]ou should have some more money here in the house some place; where is it?" She began to cry. He leaned over her and said, "What's wrong with you? I haven't hurt you, I'm not going to hurt you, stop that crying." The flashlight was still on. He then began searching through her closet which was located directly across the bed from her, approximately 12 to 15 feet away. When he finished looking in the closet, he walked around the foot of the bed and she could see his reflection in the mirror. He inquired about a watch that was lying on a chest to the right of the bed but decided not to take it when told that it belonged to her father, and that it was broken. He then walked around to the left side of the bed, sat on its edge and said to her mother, "Moms, you know we have to make a living the best way we can. There are a lot of ways people can get into your house. I don't

work in this area, but I might be back." He asked if there was another way out of the apartment and was told that there was a back door. He walked out of the room, stood in the lighted hall and told them to give him 15 minutes before they got up. After he had gone, she called the police. In addition to the knife, her watch and approximately $70 to $100 was taken. She told police that the man was about 5 feet 8 inches, brown skinned, with a natural-style haircut that was not "real bushy." He had no hair on his face, but he did have sideburns. He wore dark clothing. His general appearance was that of a "gorilla." On August 30 she went to the police station where she was shown about 100 photographs. She picked out two photos depicting the man who had burglarized her apartment and identified defendant as the man seen in the pictures.

Hazel Jones was called as a State's witness and testified that on the morning of August 26, at about 5:15, she was awakened by a noise. She called to her daughter; hearing no answer she got out of bed and started to go down the hall. There she saw a man standing at her daughter's bedroom door. He flashed a light in her face and ordered her to get into bed with her daughter. The man emptied the contents of her daughter's purse on the floor and then asked Mrs. Jones to get her own purse. He followed her into the hall, told her to get both of her purses and then took them from her after she had picked them up in the dining room. He removed $144 in cash from the purses but did not take the savings bonds that they also contained. The hall light was on as was the light in the dining room. Her daughter began to cry; the intruder leaned over her and told her to stop. He was carrying a knife and a flashlight. Thereafter, he looked into the closet and searched a dresser and a chest of drawers that were near the bed. While he was rummaging through these items, he was kneeling on the floor "no more than a foot or two away." He told them to remain in bed for 15 minutes while he made his escape. During the burglary her only view of defendant was a side view. She was not asked by the police to make a photographic identification of defendant.

It was stipulated that the testimony of Chicago Police Officer Roland Charles at the hearing on the motion to quash the arrest would stand at trial. Charles testified that he was assigned to investigate the burglary at Ms. Kyle's apartment. He interviewed Ms. Kyle and Mrs. Jones on August 29 and the next day exhibited some photos for Ms. Kyle. She identified two pictures of defendant as being photographs of the burglar. He ascertained where defendant was living and proceeded to that address accompanied by two other police officers. He was shown to defendant's room and placed him under arrest. On the dresser in the room

822

where defendant was arrested was a knife with a black handle on which a tiger was etched. It matched the description Ms. Kyle had given him of the knife that the burglar had taken.

Defendant called no witnesses at trial and chose not to testify on his own behalf.

OPINION

Defendant first contends that the identification testimony adduced at trial was insufficient to establish his guilt beyond a reasonable doubt. ■■■ It is the function of the trier of fact to determine the credibility of witnesses, and its finding of guilty will be disturbed only where the evidence is so unsatisfactory as to leave a reasonable doubt as to a defendant's guilt. (*People v. Hampton,* 44 Ill.2d 41, 253 N.E.2d 385.) Positive and credible identification by even one witness is sufficient to support a conviction. (*People v. Davis,* 19 Ill.App.3d 709, 312 N.E.2d 360.) In the case at bar both Ms. Kyle and her mother identified defendant as the intruder. The record reveals that they had many opportunities to see him at close distances under adequate lighting conditions. Throughout the burglary defendant had his flashlight turned on; through much of it the hall light was on as well. Most of defendant's activities were centered in the confined area of Ms. Kyle's bedroom. At one point he leaned over her, at another point he knelt within a foot or two of her mother. The fact that Ms. Kyle was able to give police a detailed description of defendant's appearance and subsequently made a photographic identification of him further indicates that the in court identification of defendant was not uncertain or doubtful. This identification testimony was corroborated by the fact that the knife which was taken from Ms. Kyle's purse during the burglary was found by police in the room where defendant was apprehended. We therefore find that defendant was proven guilty beyond a reasonable doubt.

It is next contended that the trial court erred in not striking certain testimony objected to by defendant. The basis of this contention is found in the following colloquy between the prosecutor and Ms. Kyle:

"Q. What did he say at that time as he was sitting on the foot of the bed?

A. He said, 'Well, Moms, there is a lot of ways—'

Mr. Mandeville [defense counsel]: I object to that.

The Court: On what grounds?

Mr. Mandeville: How is that relevant, what he said?

The Court: Overruled.

Mr. Norris: Q. Go ahead, Miss Kyle, indicate what he said at that time.

A. He said, 'Moms, you know we have to make a living the best way we can. There are a lot of ways people can get in your house.' He said, 'I don't work in this area but I might be back.'

Mr. Mandeville: I object and move that it be stricken.

The Court: Overruled."

As the record plainly indicates, defendant specified relevancy as his grounds for objection at trial. On appeal he asserts that this testimony is objectionable because it relates to prior unrelated criminal acts. It is well established that "[a]n objection to evidence based on a specified ground * * * waives all grounds not specified." (*People v. Killebrew*, 55 Ill.2d 337, 341-342, 303 N.E.2d 377.) We therefore find that defendant is foreclosed from raising this issue before us. Moreover, defendant concedes that the statement in question does not directly refer to his involvement in other crimes. It would thus be mere speculation for us to hold that the trier of fact read into it the innuendos asserted by defendant. *Cf. People v. Appleton*, 1 Ill.App.3d 9, 272 N.E.2d 397.

■■ The trial court imposed a sentence on the burglary conviction of from 3 to 8 years. The State concedes that the minimum term imposed exceeds that allowable under the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(3)) and acknowledges that it should be reduced to 2 years and 8 months.

For the foregoing reasons defendant's conviction is affirmed and his minimum sentence reduced to 2 years and 8 months.

Affirmed as modified.

SULLIVAN, P. J., and LORENZ, J., concur.