THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST V. HAYES, Defendant-Appellant.

(No. 60963;

First District (5th Division)—October 10, 1975.

James J. Doherty, Public Defender, of Chicago (Kathryn J. Kuhlen, James L. Rhodes, and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM (Before Barrett, P. J., Drucker and Sullivan, JJ.):

This is an appeal from a conviction for robbery. Defendant was originally indicted for the offense of armed robbery in violation of section 18—2 of the Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, par.18—2.) In a bench trial he was found guilty of the lesser offense of robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—1) and sentenced to a term of three to nine years. On appeal, he contends the trial court erred (1) in refusing his counsel the opportunity to confer with him after he stated that he wanted a bench trial; (2) in refusing to order a psychiatric examination as requested by his counsel; and (3) in restricting his counsel's cross-examination of the complaining witness.

The record discloses that when his case was called for trial, defendant, with his attorney present, personally stated to the court that he would like to file two motions which the court directed that he give to his lawyer. These were motions to dismiss and quash the complaint and both were denied by the court. The case did not proceed to trial at that time but was recalled that afternoon, whereupon defendant stated to the court that he wanted a bench trial and at the same time expressed dissatisfaction with his appointed counsel. Thereafter, the following colloquy took place:

"THE COURT:　*　*　*　Are you telling the Court you don't want a jury?

DEFENDANT HAYES: Yes, sir.

MR. LINCOLN [defendant's attorney]: I wonder if I could have a brief recess to talk to the defendant?

THE COURT: Just a minute. Let me ask you this: You understand, Mr. Hayes that you have a constitutional right to have this case in which you are charged with the offense of armed robbery heard by a jury of twelve persons. You understand that?

DEFENDANT HAYES: Yes.

MR. LINCOLN: I wonder if I could just have a moment to talk to the defendant.

*　*　*

MR. LINCOLN: This is a complete surprise to me. I just wanted to talk to the defendant to make sure he understands.

* * *

THE COURT: Do you understand, Mr. Hayes, that you have the right to have your case heard by a jury of twelve people?

DEFENDANT HAYES: Yes, your Honor.

THE COURT: That is, a jury would be selected, would come into open court. They would be interrogated as to their background and as to their knowledge of any of the facts in this case and they would then be selected based upon their ability to be fair and impartial to both sides in this case. You understand you have that right?

DEFENDANT HAYES: Yes, your Honor.

THE COURT: By saying that you wish a bench trial that means you lose that constitutional right to a trial by jury and the Court sits both as the finder of fact and as the finder of law, and there will be no jury.

DEFENDANT HAYES: I understand.

THE COURT: That means you waive or lose that constitutional right to a trial by jury. Do you understand that?

DEFENDANT HAYES: Yes, your Honor.

THE COURT: Has anyone used any force or any duress or threatened you or forced you to waive your constitutional right to a trial by jury and say that you wish to submit your cause to the Court without a jury?

DEFENDANT HAYES: No.

THE COURT: And you understand that by saying that you want a bench trial that you will lose your constitutional right to a jury trial?

DEFENDANT HAYES: Yes, sir."

Defendant then executed a written jury waiver and acknowledged that by signing the document he waived his constitutional right to a jury trial and agreed to submit his case to the court without a jury.

There was then a delay of about 30 minutes before the trial began, after which the following testimony was received:

William Bostwick, a witness on behalf of the State, testified that he was working as a bartender at the Pastyme Lounge when defendant returned to the tavern after having been there earlier. They had a conversation for "a few seconds" and defendant then opened a newspaper wide enough to reveal "the hole" of a gun, and at the same time he asked Bostwick to cash a check for $150. Bostwick said he did not have that kind of money in the register, and defendant said, "Never mind, just give me all the money." There were four customers in the tavern and, because Bostwick did not want anyone to get hurt, he handed the money

in the cash register (between $100 and $150) to defendant. In return, defendant gave Bostwick a card from the Moody Bible Institute and told him to place it in the cash register to make it appear that he had just cashed a check.

The witness further stated that defendant then asked him to get a sandwich from the back of the bar but then told him to "go to the washroom." After hearing the tavern door slam, Bostwick ran out of the washroom and called the police. Bostwick later identified defendant as the robber.

Harriet Nelson, a witness on behalf of the State, testified that she was the owner of the Pastyme Lounge and that on the date in question Bostwick was employed as her bartender. She said she had previously known defendant and had first met him in 1960. Ms. Nelson said she saw him in the bar the day before and on the day of the robbery.

Monroe Vollick, a witness on behalf of the State, testified that he is the police officer who arrested defendant in Springfield, Illinois. After apprising defendant of his constitutional rights, Vollick interrogated him regarding the robbery of the Pastyme Lounge. Defendant replied that "There is no sense in denying it." Defendant told the witness that he was in the tavern, went out to a discount store, bought a plastic gun, came back, put the gun in a newspaper, laid it on the bar and told Bostwick he wanted his money. He took the money, told Bostwick to go to the washroom, and then defendant left the tavern.

On cross-examination, Vollick stated that he made out a police report in which he stated, "Being advised of his constitutional rights he [defendant] freely admitted all parts of the robbery and stated he did it." Otherwise, Vollick did not include in his report any of the particulars concerning the robbery as told him by defendant.

Miriam Swanson, testifying for the defense, said that she was in the tavern at the time of the alleged robbery, but she did not notice anything unusual. She stated that something was said about a robbery after it occurred, but before that she had not seen anyone with a gun nor had she heard any unusual noises.

Thereupon, the court found defendant guilty of robbery and this appeal follows.

OPINION

Defendant argues that it was error for the trial court to refuse to grant defense counsel the opportunity to confer with defendant after he stated he wanted a bench rather than a jury trial. No objection is made that defendant was not fully admonished of his right to a jury trial prior to signing the jury waiver. Rather, appellate counsel states defendant

was deprived of the "guiding hand of counsel" in waiving that right. However, it is clear from the record that defendant did not want the advice of counsel concerning the waiver of the jury trial. In *Adams v. United States ex rel. McCann*, 317 U.S. 269, 87 L.Ed. 268, 63 S.Ct. 236, it was held that a defendant may waive the right to jury trial without the advice of counsel, the court stating:

> "The question in each case is whether the accused was competent to exercise an intelligent, informed judgment—and for determination of this question it is of course relevant whether he had the advice of counsel. But it is quite another matter to suggest that the Constitution unqualifiedly deems an accused incompetent unless he does have the advice of counsel. * * *
>
> * * * [W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.
>
> * * *
>
> * * * To assert as an absolute that a layman, no matter how wise or experienced he may be, is incompetent to choose between judge and jury as the tribunal for determining his guilt or innocence, simply because a lawyer has not advised him on the choice, is to dogmatize beyond the bounds of learning or experience. * * * To deny an accused a choice of procedure in circumstances in which he, though a layman, is as capable as any lawyer of making an intelligent choice, is to impair the worth of great Constitutional safeguards by treating them as empty verbalisms." 317 U.S. 269, 277-80.

The *Adams* case was cited with approval in *Faretta v. State of California*, — U.S. —, 45 L.Ed.2d 562, 95 S.Ct. 2525, wherein the court held that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily and intelligently elects to do so. Thus, the Supreme Court approved the Court of Appeals ruling in *United States v. Plattner* (2nd Cir. 1964), 330 F.2d 271, which recognized that:

> "[I]mplicit in the Fifth Amendment's guarantee of due process of law, and implicit also in the Sixth Amendment's guarantee of a right to the assistance of counsel, is 'the right of the accused personally to manage and conduct his own defense in a criminal case.' 330 F.2d, at 274." — U.S. —, 45 L.Ed.2d 562, 571, 95 S.Ct. 2525, 2532.

Here, defendant stated emphatically and on several occasions that he wanted a bench trial. Had he asked for time to discuss the matter with

his attorney and been denied that opportunity, a different issue would be presented; however, defendant received full admonition by the court regarding the consequences of a jury waiver and nevertheless stated that he wished to waive this right which is personal to him. His decision appeared to be unwavering, and the record indicates it was made in an intelligent, informed manner.

■■ In view of the foregoing, we cannot say that the trial court abused its discretion in denying defense counsel a recess to discuss with defendant his decision concerning the waiver of a jury trial. Our belief is further strengthened in this regard because counsel did have time to talk to defendant after the case was initially called for trial until it was recalled in the afternoon, and again during the half-hour period after defendant had waived his right of trial by jury until the trial actually began.

■■ Defendant also argues that the trial court erred in refusing to order a psychiatric examination of defendant. As a general rule, the court should order a competency examination whenever there exists a *bona fide* doubt whether defendant understands the nature and object of the charges against him or can, in cooperation with his counsel, conduct his defense in a rational and reasonable manner. (*People v. Hammond,* 45 Ill.2d 269, 259 N.E.2d 44; *Withers v. People,* 23 Ill.2d 131, 177 N.E.2d 203.) The only grounds offered in support of the request for such an examination is that when the case was called for trial, defendant refused for the first time to cooperate with his counsel who stated defendant was "extremely hypertense" and that he had previously been in a mental institution. Defendant, however, answered the latter assertion by stating that he had only been at the institution "as an electrician to put up a power house." In this regard, we note the comment of the court that "I look at Mr. Hayes and I speak with him and I consider him to be competent. He gives no appearance of not knowing of what he is saying. He gives no appearance of being confused as to time, place or circumstance and he speaks rationally and as though he is a person who has all of his faculties about him presently here and now." From our review of the record, we do not believe the trial court erred in finding that no *bona fide* doubt existed as to defendant's fitness to stand trial.

Finally, defendant argues that it was error for the trial court to restrict the cross-examination of Bostwick concerning his preliminary hearing testimony. Counsel attempted to impeach Bostwick's trial testimony that defendant had told him, "Don't get excited this is a holdup" and "Give me all the money" by the fact that this express language had not been used by the witness at the preliminary hearings. Objections

were sustained as to efforts to impeach the witness by statements he made at the preliminary hearing.

■■■ The law is clear that the latitude allowed in cross-examining a witness rests within the discretion of the trial court (*People v. Gallo*, 54 Ill.2d 343, 297 N.E.2d 569; *People v. Clark*, 96 Ill.App.2d 247, 238 N.E.2d 220), and only in a case of clear abuse of discretion resulting in manifest prejudice to defendant will a reviewing court interfere with the trial court's decision. (*People v. Nugara*, 39 Ill.2d 482, 236 N.E.2d 693, *cert. denied*, 393 U.S. 925; *People v. Davis*, 19 Ill.App.3d 709, 312 N.E.2d 360.) While a witness may properly be cross-examined as to prior inconsistent statements, the inconsistency must be substantial and relate to a material and not a collateral or irrelevant matter. (*People v. Dascola*, 322 Ill. 473, 153 N.E. 710; *People v. Boyd*, 22 Ill.App.3d 1010, 318 N.E.2d 212.) The test of whether a prior statement is sufficiently inconsistent to be utilized for impeachment purposes has been variously stated but is basically that the inconsistent statement must have a reasonable tendency to discredit the direct testimony on a material matter. *People v. Boyd; People v. Rainford*, 58 Ill.App.2d 312, 208 N.E.2d 314.

■■ It appears to us that the testimony of Bostwick at the trial was not materially different from his testimony at the preliminary hearing. Both revealed defendant had a gun, the ruse of defendant asking Bostwick to cash a check for $150, and the fact that Bostwick took the money out of the cash register so as not to alert the customers to the robbery. Bostwick's testimony as to the occurrence at the preliminary hearing and at trial was substantially the same and thus the former would not tend to discredit his direct testimony on a material matter. Therefore, we believe there was no material inconsistency or, even if so construed, there appears no manifest prejudice to defendant.

For the reasons stated, the judgment is affirmed.

Affirmed.