**People of the State of Illinois, Plaintiff-Appellee,
v. Jerry Henderson, Defendant-Appellant.**

**Gen. No. 49,720.**

First District, Second Division.
June 21, 1966.
Rehearing denied July 26, 1966.

R. Eugene Pincham and Charles B. Evins, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This appeal comes from a finding of guilty entered in the Circuit Court of Cook County, February 7, 1964, upon an indictment charging the crime of theft, Ill Rev Stats, 1961, c 38, § 16–1. The appellant claims that the court below went outside the record and relied on matters of his own belief and not supported by the record. It is also claimed that the appellant was not proven guilty of the offense charged.

The complaining witness, Harry Davis, testified that on October 5, 1962, he met three men whom he did not know on a street in the city of Chicago. They were soon joined by the appellant, Jerry Henderson. According to this witness, he wanted to get some money to show to one of the other men, and the appellant went with him as he proceeded to collect the $4,400 which, except for $20 currency exchange fees, was later taken from him. He wanted the money because one of the men he did not know had said he had inherited some money from his grandfather, and that if anyone had money to show, he would divide his money among them.

Davis went to his home with the appellant, and told the appellant to distract Mrs. Davis so that the complaining witness could get their bankbook without his wife's seeing him. This was accomplished, and at the same time Davis took $400 in cash which was kept in the house. The two men then went to the bank where the complaining witness drew a cashier's check in the amount of $4,000. Following this, Davis, the appellant Henderson, and the three unidentified men went downtown to see an attorney whom Henderson knew, and whom, they hoped, would be able to help them cash the check. The attorney told the men he was not in the check cashing business, but called a currency exchange and told them that the men were coming over with a check. He told

the people at the exchange he could not verify the authenticity or negotiability of the check. Davis, Henderson and the three other men then proceeded to the currency exchange. They were told that the exchange did not have $4,000 in cash at the moment, but after calling the bank on which the cashier's check was drawn, the proprietor of the exchange drove Davis and Henderson in his own automobile to a downtown bank where he cashed the check, and after taking the exchange's fee from the money, turned the remainder over to Davis. Davis put the money in his pocket. Davis testified that he and Henderson then joined the other three men who were waiting for them near the currency exchange, and that upon entering the car he was driven to "God knows where." One of the men said something about "bumping him off," and the complaining witness testified that he was frightened. He said that one of the men had a tire iron. The appellant is then said to have put his hand in Davis' pocket and taken the money. He said the men then went into a gangway and returned with a bundle which they said contained both Davis' money and that of the unknown man who had said he had inherited money from his grandfather. When the bundle was opened, it contained a single one-dollar bill.

The appellant testified that when he met the three unidentified men, they told him that they had been playing cards with Davis and had won some money. He said the men asked him to go with Davis while he got the money so that if anything later came up they could not be identified. He admitted going with Davis to the various places mentioned in the complaining witness' testimony. Henderson said, however, that after Davis received the money and the two of them had rejoined the three men, one of them gave him $300 and that he then left the group.

The appellant further testified that he was in two separate lineups on October 16, 1962, that Davis viewed both these lineups and failed to identify the appellant. It was further claimed by the appellant that he had seen the complaining witness in the Criminal Court Building and that Davis had said to him, "I know you didn't take my money. . . . I didn't want to say that you had taken my money, but the officer kept pressing me."

A police officer, Detective Lovejoy Foster, testified that he arrested the appellant in connection with this crime, and that the appellant denied his participation in the offense at that time. He testified that the appellant claimed he was an intermediary between the complaining witness and the three unidentified men to whom, he said, Davis had lost some money. The statement Henderson gave the police was consistent with the testimony he gave at the trial. The report made out by this officer shows that the complaining witness had told him at one point that he had lost $70 to the three unidentified men playing cards. On redirect examination, however, the officer explained, "Mr. Davis said that the gentlemen were playing cards and that they told him that he was playing and he had . . . lost $70.00, which he states, also, that at no time did he ever have any cards. But it was from the information that they told him that he had lost $70.00 and he owed $70.00. But this man that had the money, he would give all of the gentlemen some money if they could show that they had money."

 The first claim made on this appeal is that the court below went outside the record and relied on matters on which there was no evidence. The appellant points to places in the record where the court below made comments about him which were not supported by the testimony. All but one of these comments, however, occurred after the finding of guilty had been entered by

the court. The one instance where the court made a comment about the appellant during the trial is when the first witness to testify, the attorney to whom the men went with the cashier's check, identified the appellant. The court then interjected, "With a pair of tight-fitting pants." While the court below acted improperly in commenting on the appellant's clothing, this did not constitute reversible error. While the Appellate Court will look closely at any case where the trial judge makes comments prejudicial to the defendant in the course of a jury trial, in this case the matter was tried with the judge as trier of fact. We cannot say here that the fact that the court below commented on the appellant's tight-fitting pants demonstrates a prejudging of his guilt. From that point to until after the finding of guilty had been pronounced, nothing occurred which would indicate prejudice on the part of the trier of fact.

 There are, however, complaints concerning the conduct of the trial judge at the hearing in mitigation and aggravation. At this hearing, the court below made some statements concerning the appellant's clothing which would have been much better left unmade, but after reviewing the record as a whole, we cannot say that the finding of the trial judge was the result of passion or prejudice. "Unless there is reasonable doubt as to defendant's guilt based upon the evidence, it is our duty to affirm the judgment, if the record is free from substantial prejudicial error." People v. Williams, 17 Ill 2d 193, 161 NE2d 295 (1959).

 The other claim made by the appellant in this court is that he was not proved guilty of the alleged crime. He first points to the fact that he was indicted for the crime of theft. He alleges that if the evidence shows guilt of any crime, it is the crime of robbery, and claims that his conviction cannot stand since he was indicted for the wrong crime. With this

contention we cannot agree. The crime of theft is in part defined in the Criminal Code as follows:

"A person commits theft when he knowingly:

"(a) Obtains or exerts unauthorized control over property of the owner; or

". . .

"(c) Obtains by threat control over property of the owner;

". . ."

The testimony given at the trial was sufficient to support a conviction for this crime. Subsection (a) is sufficiently broad to cover any unauthorized taking or control of property; subsection (c) would also apply to the facts of this case. The fact that the appellant might have been indicted for the crime of robbery rather than theft does not invalidate this conviction. It is true that a criminal defendant cannot be indicted for one crime and found guilty if the proof shows he committed an entirely different offense. Thus, for example, it would be improper if a defendant were indicted for the crime of arson and convicted upon proof that he committed theft. That is not the case here. In this case, the appellant was indicted for theft and the evidence sustains the finding that he committed every element of that crime. The argument is not made here that the appellant did not have the requisite intent to commit the offense charged. This being so, we have no basis for reversing the conviction on the claim that the proof did not show the crime alleged in the indictment.

We hold, therefore, that the proof is sufficient to sustain this conviction. While it is true that the complaining witness' recounting of the plan to "show money" was somewhat less than completely clear, it was perfectly clear with respect to the appellant's taking from his

possession the sum of $4,400 less $20 currency exchange fees. There being no reversible error, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

LYONS and BURKE, JJ., concur.