People of the State of Illinois, Plaintiff-Appellee, v. Joseph Ferrara, a/k/a Ignatius Ferraro, Defendant-Appellant.

Gen. No. 69–90.

Second District.

August 22, 1969.

Marco and Mannina, of Downers Grove, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Helen C. Kinney, Assistant State's Attorney, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Defendant appeals from a judgment of conviction, after a jury trial, under a two-count indictment of theft of a value of property under $150 [1] in count I and the same theft, *"after having been convicted of armed robbery on June 22nd, 1943,"* [2] in count II. The jury found the defendant guilty under both charges, but he was given a single sentence of 2 to 4 years in the penitentiary.

The appeal was taken to the Supreme Court which transferred it to this Court, noting,

> Defendant was convicted of theft under an indictment which charged that he had previously been convicted of armed robbery. He argues that armed robbery is not a type of theft within the meaning of Section 16–1 of the Criminal Code. The argument does not present a constitutional issue.

> It is further asserted that he was deprived of a fair trial by reason of the fact that evidence of the former conviction was introduced. No constitutional question is presented. (See People v. Ostrand, 35 Ill 2d 520, 529).

Defendant contends that robbery is not a "theft" within the meaning of that term in section 16–1 (supra);

[1] Ill Rev Stats 1967, c 38, § 16–1.

[2] Ill Rev Stats 1967, c 38, § 16–1, supra: "Penalty . . . a person convicted of such theft a second or subsequent time, or after a prior conviction of any type of theft, shall be imprisoned in the penitentiary from one to 5 years . . . ."

that he was deprived of a fair trial by reason of the fact that the inclusion of the remote prior conviction was solely for the purpose of prejudicing defendant on the recent charge. (To the extent that these arguments are claimed to assume substantial constitutional proportions, they have been disposed of by the Supreme Court transfer order.) Defendant also contends that he did not receive a fair trial because of an accumulation of trial errors; that the jury was improperly instructed; and that he was not proven guilty beyond a reasonable doubt.

Edward Novy, an assistant security manager for the E. J. Korvette Department Store in Elmhurst, testified that on November 29th, 1966, some time after 1:00 p. m. he saw the defendant in the men's department going into the coat department. Defendant took off his coat, laid it across the coat rack and tried on several coats. The coat that he was first wearing was a black three-quarter length coat. The last one he took from the rack and put on was a car coat length. He then put his own black coat over it. He looked from left to right, at which time he proceeded out of the store without making payment. The witness went out of the store after defendant and approached Ferrara in the parking lot. Novy asked defendant if he had a receipt for the coat and defendant told him that the coat had belonged to him. Novy then told defendant what he had seen take place in the store and testified that defendant responded "Well, all right, I did take it."

Novy further testified that he asked defendant to come back inside the store, and that defendant asked him if there was any way this could be taken care of without going through all the trouble. When defendant was asked what he meant by this he said he would see that we got $100 for it, although he didn't have the money on him at the time, but would get it. The witness refused, at which time defendant said, "Everyone has their price, what's yours?" Defendant was advised that he would

476

either have to come back into the store or the police would be called to pick him up in the parking lot. Ferrara accompanied the witness back into the store where the police were called and arrested the defendant.

The witness then identified State's Exhibit No. 1 as the coat taken by defendant and related the procedure by which it was marked and placed in the evidence locker of the store. He had left the employ of Korvette in July of 1967 and had last seen the coat in November of 1966. Novy could not be positive of his own personal knowledge that the coat and ticket were the same items taken from the defendant, as there were no identifying marks placed on the jacket itself.

Kenneth Davis, a security agent for Korvette, testified that he was with Mr. Novy on November 29th, 1966. He saw the defendant come into the men's department, go over to a rack of men's coats, suede coats, remove his own coat, try on several coats and place one on his person. Defendant then placed his own coat over it and left the store without making payment. The witness, with Mr. Novy, followed defendant out of the store and into the parking lot. He testified that Mr. Novy identified himself and asked Ferrara if he had a receipt for the suede jacket that he had on and that Ferrara said no.

The defendant denied that he had taken the jacket, first saying it was his own jacket and then after being told that both Novy and Davis had observed him the whole time in the store, admitted that he had just gotten in from California, that it was cold and he didn't have much money on him and he needed a jacket, so he stopped in and picked one up. Davis corroborated Novy's testimony as to the offer of the bribe.

Davis identified the suede jacket and a tag which he said defendant removed from the pocket of the jacket and threw on the ground in the parking lot. The witness also testified that there were no identifying marks on the

477

coat and he could not personally know that it was kept in the security locker at all times.

Both witnesses testified that this was the only men's jacket or coat recovered on November 29th, 1966.

There was testimony that the jacket was put into the security locker in a Korvette bag which was marked as State's Exhibit No. 2 for identification, and a written memorandum prepared by Mr. Raymond, the security manager for Korvette, was attached to the sealed bag.

An Elmhurst police officer, Robert Doyle, testified that he was called to the store on the day in question and saw the defendant in the security office of the Korvette company. He testified that a Korvette security officer brought the jacket to the station and that the witness saw it in the station later in the day. The officer said that aside from being rolled and wrinkled it was substantially in the same condition as when he first saw it.

The record of the defendant's 1943 conviction for armed robbery was introduced by the State and the defendant stipulated that the person named in that indictment was the defendant in this case.

In defendant's case, his wife testified that when they drove to the Korvette store the defendant was wearing the coat identified as State's Exhibit No. 1. When they arrived at the shopping center she went shopping in another store and her husband went to the Korvette store, and she did not see him again until that evening when she was notified that he was being held at the Elmhurst police station. She testified that defendant purchased his coat at the Korvette store in Morton Grove where they were living when they first arrived in the Chicago area from California in September of 1966.

Defendant testified that he had purchased the jacket in October in the Korvette store in Morton Grove and that he did, at no time, take the suede jacket from the Korvette store. He testified that since it was raining he was wearing a raincoat over the jacket and denied that he

made any statement to the security officers that he did take a jacket.

The State, on rebuttal, called witnesses who testified that the raincoat, which was marked Defendant's Exhibit 1, was not the coat they saw the defendant wearing on the date in question.

██ The indictment was proper. The prior conviction of robbery was a conviction of "any type of theft" as encompassed in the penalty provision of the Illinois Theft Statute. (C 38, § 16–1, supra.) While robbery is not mentioned by that name in the theft section, but is given a separate category in the Code of Criminal Procedure (Ill Rev Stats 1967, c 38, § 18), robbery in fact has been considered an aggravated form of theft included in the generic definition of theft in section 16–1. People v. Henderson, 72 Ill App2d 89, 95, 218 NE2d 795 (1966). Theft may also be a lesser included offense in a robbery charge. People v. Tolentino, 68 Ill App2d 480, 484–5, 216 NE2d 191 (1966). The enhanced penalty portion of section 16–1 is not ambiguous in our opinion and authorities to the effect that enhanced penalty provisions are to be strictly construed are not applicable. See People v. Lund, 382 Ill 213, 216, 46 NE2d 929 (1943).

██ The allegation and evidence of the prior offense were necessary to prove the felony charge in count II of the indictment. It has been settled that evidence of a former conviction can be introduced when it is relevant for the purpose of proving an element of the offense. People v. Ostrand, 35 Ill2d 520, 529, 221 NE2d 499 (1966); People v. Weaver, 41 Ill2d 434, 438, 243 NE2d 245 (1968). A suggestion by defendant that the purpose of alleging and proving the prior offense was merely to prejudice the defendant, is without support in the record. The further argument that the prior offense is too remote in time ignores the clear wording of the statute (section 16–1, supra) which does not limit the time of the prior offense.

479

Defendant's contention that the conviction under count I of the indictment must be reversed as a matter of statutory law because the offense in each count arises out of the same conduct has no merit here. The prohibition is against sentencing a defendant for more than one offense resulting from the same conduct, as explored in the case defendant cites, People v. Durant, 105 Ill App2d 216, 245 NE2d 41 (1969). Here defendant was given a single sentence.

We next consider defendant's contention that a combination of trial errors prevented the defendant from receiving a fair trial. No reference is made to any improper remarks in opening statement or in final argument. The references to questions and answers claimed to have been prejudicial did not have that effect in our opinion from a careful examination of the record, and were, for the most part, the result of a response to inquiries initiated by defendant's counsel.

We will refer to several of the alleged trial errors which defendant has emphasized.

■ The State's witness, Novy, was allowed to testify over objection that he was bonded in his new job, working for a merchant patrol service. This was elicited on redirect examination after defendant's counsel had inquired whether the witness still worked for Korvette. The State argues that the purpose of this question was to avoid an implication that the witness was unsuited for security work or had left Korvette's employment under a cloud. We are not persuaded by this argument, but we also cannot perceive any substantial prejudice to defendant from the inquiry.

■ Defendant claims it was error for the State witness, Davis, to testify over objection that State's Exhibit No. 2 was a note and memorandum attached to the outside of a bag, allegedly containing the suede jacket marked State's Exhibit No. 1, and then being allowed to read the note which was to the effect:

480

One Man's Suede Coat, brown in color at $52.99. Evidence held for prosecution of JOSEPH FERRARA for shoplifting on 29 November, 1966. Apprehended by Ed Novy at 1400 hours, 29 November, 1966. Complaint #25480 signed by Novy at Elmhurst Police Station. Before Judge Fitzgerald, 29 November, 1966. Evidence held by Ed Novy for prosecution.

The record discloses that prior to this, defendant's counsel on cross-examination, had been seeking to impeach the witness's identification of the jacket. Defense counsel initiated the inquiry as to whether the bag would help the witness identify the coat and the answer was that the information on the bag would tell the witness what coat was in there. Counsel himself referred to the note by his question, "So, all it says on the bag is that there was a coat, men's suede coat, brown, recovered, isn't that right?" Upon receiving an affirmative answer defendant's counsel then put the question, "but it doesn't tell you that this particular coat was recovered, this one?" In view of this, we believe that the People were properly permitted to refute the inference that there had been any confusion or substitution of the particular jacket alleged to have been stolen.

■ ■ Objection is made to the court permitting the police officer to testify that he was shown the jacket "that they had said he had taken," by the security officers at a time when the defendant was present. Defendant seems to claim that this created an unfair inference that because defendant was not stated to have said anything at that point his silence showed guilt. However, whether the accusation was heard and whether the circumstances were such that a response would normally be made, are questions for the trial judge to determine, (People v. Bush, 29 Ill2d 367, 372, 194 NE2d 308 (1963)), and we find no abuse of discretion here. When defendant testified, he stated on cross-examination that he did

protest when he was in the Elmhurst Police Station, so that no prejudice is evident.

 While the State improperly asked one of the police officers whether defendant was "interested in making a bond, as he is entitled to?" at the police station, an objection to the question was promptly sustained by the court and no prejudice to the defendant is evident.

Defendant contends that the trial court erred in giving certain of the State's instructions and in refusing certain instructions offered by him. The conference on instructions has not been fully abstracted, but we have searched the entire record and conclude that no prejudicial error was committed.

 Defendant makes particular objection to State's Instruction No. 9 as being within the prohibition of People v. Church, 366 Ill 149, 160, 7 NE2d 894 (1937). It provides:

> You are not bound to believe something to be fact simply because a witness has stated it to be a fact, if you believe from all evidence that such witness is mistaken, or has testified falsely concerning such alleged fact.

No objection to the giving of the instruction appears in the trial record and defendant cannot be heard to object for the first time on appeal. Moreover, this was not an instruction which told the jury to disregard the entire testimony of the witness whether corroborated or not, which has been condemned in the cited case. Devaney v. Otis Elevator Co., 251 Ill 28, 38, 95 NE 990 (1911).

A number of the State's instructions were objected to in conjunction with defendant's argument that the indictment was faulty in permitting the reference to the prior robbery conviction, and we find no error in giving those instructions.

 Defendant argues that State's Instruction No. 17 was erroneous in that it attempted to define reasonable doubt, and in that it required the jury to determine what is essential and material. The instruction provides:

> The Court instructs the jury that the rule requiring the jury to be satisfied of the guilt of the defendant from the evidence beyond a reasonable doubt in order to warrant a conviction is complied with, if, taking the testimony altogether, the jury is satisfied beyond a reasonable doubt that the defendant is guilty. The reasonable doubt that the jury is permitted to entertain to authorize an acquittal must be as to the guilt of the accused on the whole evidence and not as to any particular fact in the case not essential and material to constitute the offense charged.

The court gave State's Instruction No. 11 defining theft in the language of the statute, and taking the instructions as a whole the elemental facts constituting the crime charged were given to the jury so that State's Instruction No. 17 was not prejudicial. People v. Weaver, 18 Ill2d 108, 115, 163 NE2d 483 (1959).

Defendant's instructions which he claims were erroneously refused were covered by other instructions, and taking the whole series no reversible error has been shown.

██ ██ The record establishes that defendant's conviction was based upon evidence showing his guilt beyond a reasonable doubt in a trial free from substantial and prejudicial errors. A direct conflict exists between the testimony of the prosecuting witnesses and the testimony of the defendant concerning the incident. This conflict was clearly a matter of weight and credibility to be de-

termined by the jury and which the jury resolved in favor of the State.

The judgment is affirmed.

Affirmed.

MORAN, P. J. and DAVIS, J., concur.