THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
AUBREY SCOTT, Defendant-Appellant.

First District (2nd Division) No. 58054

Opinion filed February 26, 1976.

LEIGHTON, J., dissenting.

John Elson, of Mandel Legal Aid Clinic, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

This is an appeal by defendant-appellant, Aubrey Scott (hereinafter defendant), from his conviction of petty theft for shoplifting, for which he was fined $50. He paid the fine and timely filed his notice of appeal. He had been arrested without a warrant at the scene of the incident. A few hours later, he had posted $100 in cash (10% of the pretrial bond of $1,000 prescribed by Supreme Court Rule), and had been freed from custody with a first court appearance scheduled for 11 days later. On the scheduled date he duly appeared in court, but he was without counsel. The court proceeding began as a preliminary hearing on the existence of probable cause to charge him with the offense. But, when he indicated to the court that he was then ready for trial, the court ordered him arraigned, and he pleaded not guilty. After having been

advised of his right to a jury trial, he waived a jury. His bench trial followed immediately and resulted in his conviction and sentence. At no time during the entire proceeding was he never advised of any right to be represented by counsel. This is the issue which he presents as reversible error on this appeal.

In detail, the facts are as follows: On the evening of 19 January 1972, defendant, then 52 years old, was arrested by a Chicago police officer for "shoplifting" at the F.W. Woolworth Company's store at 211 South State Street, Chicago, Illinois, pursuant to the charge of a store security guard. Early the following morning, defendant posted the prescribed bond of $1,000 by depositing $100 in cash, and was released from custody with a first court appearance scheduled for 31 January 1972. The complaint, filed by the security guard on 21 January 1972 in the Municipal Department, First Municipal District of the Circuit Court of Cook County, Illinois, charged defendant with the theft, at the time and place mentioned above, of a sample case and an address book of the value of $150 or less (specifically, of the value of $13.68), which was the property of the Woolworth Company, with the intent thereby to deprive the said Company permanently of the use and benefit of the said property—all in violation of section 16—1(a)(1) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 16—1(a)(1)).

On 31 January 1972, defendant appeared in open court as scheduled but without counsel. The court advised defendant that he was charged with the offense of theft. The court then inquired as to whether defendant was going to be ready for trial. Up to this point, the proceeding was clearly a preliminary hearing on the existence of probable cause to charge defendant with petty theft and, if so, to grant leave to complainant to file the complaint.

Defendant, however, understood the court to be asking whether he (defendant) was presently ready for trial, and defendant said that he was. When the State answered ready, the court ordered defendant to be arraigned. The clerk first again informed defendant that he was charged with the offense of theft, and then inquired whether defendant was ready for trial, to which defendant answered that he was. Called upon to plead to the charge, defendant pleaded not guilty and then orally waived a jury trial. His bench trial immediately proceeded. At no time during the entire proceeding was defendant ever advised that he had a right to counsel and, if indigent, a right to appointed counsel except where, in the latter event, the penalty upon conviction is a fine only.

The sole witness for the State was William Bray, the security guard at the Woolworth store. He testified that on 19 January 1972, he was on duty at the store; he saw defendant approach a salesgirl and heard

defendant ask the girl to unlock an attache case; the girl did so; defendant then walked around the store for about 15 or 20 minutes, carrying the case and holding a $10 bill in his hand; while defendant was walking around, he picked up an address book and put it in his pocket; defendant passed by salesgirls as he walked around the store. The guard testified further that he (the guard) then walked out of the store onto State Street; a few minutes later, defendant walked out of the store onto State Street, still carrying the attache case; the time was about 6 p.m.; the witness identified himself and ordered defendant back into the store; defendant said the case belonged to him and there were a number of articles in the case which defendant said belonged to him and which defendant had put into the case before leaving the store. The witness identified People's Exhibit 1 as the case involved, and said that the case was the property of F.W. Woolworth Company and that it was priced for retail sale at $12.95. The State thereupon rested its case-in-chief.

Defendant testified in his own behalf as follows: He had placed articles of his own into the case to see whether they would fit, which they did. He walked around the store carrying the case with his articles in it and looking for the salesgirl who had given the case to him. The salesgirl did not work behind the counter from which she had handed him the case, but rather stood near the counter. He is partially blind and he could not see the salesgirl. Suddenly, Bray came into the store through the State Street door, grabbed him by the wrist, and said: "You are a shoplifter." Defendant replied that he was not; he had come to buy a case and was looking for the salesgirl who had handed him the case for inspection. He showed Bray that he had money with which to buy it. After a second security guard had come up behind him and grabbed his hand, the police came and took him to jail.

The State declined any cross-examination, presented no rebuttal testimony, and rested its case. The court indicated that there were things it wished to know, so the prosecutor suggested that the court question defendant. The court first asked where defendant had been stopped, and noted that defendant had testified that he had been stopped in the store and had never gone out onto State Street. The court then asked how much money defendant had with him when he had been stopped, and whether defendant had offered any money to anyone. Defendant replied that he had almost $300 in his pocket and that he had the $10 bill in his hand to pay the salesgirl that amount or whatever larger amount she might indicate.

At that point, the court said: "I don't believe you, sir. Finding of guilty. What do you [the prosecutor] have in aggravation?" The prosecutor stated that, in 1957, defendant had been convicted of petty larceny

and had been sentenced to 30 days in the House of Correction and that this was defendant's most recent prior conviction. Defendant then noted that this conviction had occurred 13 years before. (In fact, it must have occurred either 14 or 15 years before.) The prosecutor recommended probation, but the court fined defendant $50 without any costs. The fine was promptly paid out of the bond deposit. On 29 February 1972, defendant filed timely notice of this appeal.

The order entered by the trial court on 31 January 1972 in substance recited:

(1) Now comes William Bray, presents his complaint under oath, and moves the court that he be granted leave to file it instanter; the court, having examined the complaint and having examined William Bray under oath, and being satisfied that there is probable cause for filing the complaint, hereby grants leave to file it instanter.

(2) Since defendant, arrested without a warrant or other process, is present in open court, the court takes jurisdiction of his person and orders the sheriff to take defendant into custody.

(3) Defendant was duly arraigned and pleaded not guilty to the offense charged.

(4) Defendant waives trial by jury.

(5) Trial before the court without a jury is now had and there is a finding of guilty, and a judgment of guilty is entered upon the finding, and a fine of $50 is assessed against defendant.

(6) Judgment for the fine is satisfied that same day by payment of $50 deducted from defendant's cash bond.

OPINION

As a preliminary matter, we note that both defendant and the State on this appeal treat defendant as an indigent person in the trial court as well as on this appeal. Defendant was convicted and sentenced and paid his fine on 31 January 1972. He filed his notice of appeal on 29 February 1972. It was not until 27 April 1972 that defendant petitioned the trial court for the appointment of a named attorney as his appellate counsel and for a free transcript of proceedings on the grounds of his indigency. His supporting affidavit alleged that his income for the preceding year was $1752, that he had no assets, and that his prospective income would consist solely of public assistance payments. The petition was allowed and the named attorney was appointed as defendant's appellate counsel. Hence, the record does not show that defendant ever did petition for an appointed trial counsel on the grounds of indigency. And yet, on this appeal, both parties agree that the issue is one of defendant's

right as an indigent to appointed trial counsel and of his right to have been so advised; both parties simply assume that defendant was in fact an indigent person in the trial court. In order to decide the issues presented, we indulge the same assumption.

Defendant's first contention on appeal is that, as an indigent, he had a right to appointed trial counsel under the Sixth Amendment to the United States Constitution (applicable to the States under the Fourteenth Amendment) even though he was actually punished by a fine only, because the offense for which he was tried was also punishable by incarceration so that at trial he was faced with potential incarceration; and that this right to appointed trial counsel had not been knowingly and intelligently waived by him for the simple reason that he had not been advised by the court that he had such a right.

The penalty provision of the statute for violation of which defendant was prosecuted is in relevant part as follows:

> "Penalty.
>
> A person first convicted of theft of property not from the person and not exceeding $150 in value shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both. A person convicted of such theft a second or subsequent time, or after a prior conviction of any type of theft, shall be imprisoned in the penitentiary from one to 5 years. \* \* \*" Ill. Rev. Stat. 1969, ch. 38, par. 16—1.[1]

To support his contention, defendant relies on *Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006, a case in which the defendant-misdemeanant was sentenced to 90 days in jail.[2] But in *Argersinger*, Mr. Justice Douglas speaking for the court, expressly said:

---

[1] At the hearing in aggravation and mitigation, the prosecutor informed the court that in 1957 defendant had been convicted of petty theft and sentenced to 30 days in the House of Correction. Therefore, it might appear that defendant, if convicted in the instant case, was facing the enhanced penalty of punishment in the penitentiary. In order to invoke the enhanced penalty, there is no limit on the period of time between the two convictions. *People v. Ferraro* (1969), 111 Ill. App. 2d 472, 250 N.E.2d 530, *cert. denied*, 398 U.S. 927, 26 L. Ed. 2d 89, 90 S. Ct. 1815. But the enhanced penalty may not be imposed unless the first conviction is alleged in the indictment and proved at the trial. (*People v. Owens* (1967), 37 Ill. 2d 131, 225 N.E.2d 15; *People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245, *cert. denied*, 395 U.S. 959, 23 L. Ed. 2d 746, 89 S. Ct. 2100; *People v. Dixon* (1970), 46 Ill. 2d 502, 263 N.E.2d 876; *People v. Ramey* (1974), 22 Ill. App. 3d 916, 317 N.E.2d 143.) In the instant case, the first conviction in 1957 for petty theft was not alleged in the complaint and was not proved at trial. Hence, defendant, in the instant case, was not tried for an offense which was punishable by imprisonment in the penitentiary.

[2] *Argersinger* has been held entitled to retroactive application. *People v. Morrissey* (1972), 52 Ill. 2d 418, 288 N.E.2d 397; *People v. Coleman* (1972), 52 Ill. 2d 470, 288 N.E.2d 396.

"We need not consider the requirements of the Sixth Amendment as regards the right to [trial] counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail." (407 U.S. 25, 37, 32 L. Ed. 2d 530, 538.)

The court's holding was then expressed as follows:

"We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. 25, 37, 32 L. Ed. 2d 530, 538.

Hence, it is clear that *Argersinger* does not support defendant's contention, and that what defendant is asking us to do is to extend *Argersinger* to his situation in which his punishment was by fine only in an amount less than the cash bail which he had posted. But we have not been cited to, nor have we found, any case in which a State reviewing court has so extended *Argersinger*. On the contrary, this court in *People v. Heal* (2d Dist. 1974), 20 Ill. App. 3d 965, 967-68, 313 N.E.2d 670 has already declined to do so, holding that in misdemeanor prosecutions generally, where no sentence of confinement is in fact imposed, there is no requirement as a matter of constitutional law that the defendant be represented by trial counsel. In *People v. Bailey* (3d Dist. 1973), 12 Ill. App. 3d 779, 782, 301 N.E.2d 481, this court expressly found it "unnecessary to decide whether the rule of *Argersinger* should apply to offenses because merely punishable by imprisonment * * *." Hence, we adhere to the decision in *Heal* and decline to extend the *Argersinger* holding to cases such as the instant case in which defendant was punished by a fine only in an amount less than the amount of the cash bond which defendant had already posted.[3] Hence, we hold that, under such circumstances, defendant had no constitutional right to an appointed trial counsel.

Defendant's second contention focuses upon a necessary consequence of the *Argersinger* decision which would be eliminated if *Argersinger's*

---

[3] We are aware that some lower Federal courts hold the position for which defendant here contends. Even before *Argersinger* was decided, the Court of Appeals for the Fifth Circuit had gone beyond *Argersinger* to hold the position for which defendant contends, and has adhered to its position after *Argersinger*. (*Harvey v. Mississippi* (1965), 340 F.2d 263; *McDonald v. Moore* (1965), 353 F.2d 106; *Matthews v. Florida* (1970), 422 F.2d 1046; *Olvera v. Beto* (1970), 429 F.2d 131; *Thomas v. Savage* (1975), 513 F.2d 536.) See, however, *Cottle v. Wainwright* (1973), 477 F.2d 269, in which the Fifth Circuit did not adhere to its position in a case in which the convicted misdemeanant had been given a 20-day suspended sentence and there was nothing in the record to show that the defendant had been imprisoned for this conviction. A few Federal District Courts in other circuits have also held the position for which defendant here contends. *Geehring v. Municipal Court of Girard* (N.D. Ohio, 1973), 357 F. Supp. 79; *Hernandez v. Craven* (C.D Cal. 1972), 350 F. Supp. 929, 936-937.

constitutional requirement of an appointed trial counsel were extended to all cases in which the defendant faced potential incarceration. The reference is to what Chief Justice Burger's concurring opinion deemed a necessary predictive pretrial evaluation by the trial judge (with the assistance of the prosecutor) "of each case to determine whether there is a significant likelihood that, if the defendant is convicted, the trial judge will sentence him to a jail term". (407 U.S. 25, 42, 32 L. Ed. 2d 530, 541).

The opinion of the court put the matter as follows:

"Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts". 407 U.S. 25, 40, 32 L. Ed. 2d 530, 540.

Defendant contends that this necessary predictive evaluation is itself unconstitutional in State courts under the due process and equal protection guarantees of the Fourteenth Amendment because, for want of an objective standard by which to make the predictive evaluation, the evaluation will be arbitrary on the part of each individual trial judge with the result that one defendant will be fined only, while another defendant under identical circumstances will be imprisoned. It suffices to say that, even if the same two hypothetical indigent defendants were each given appointed trial counsel as a constitutional right, the same disparity of sentencing could occur after both had been convicted. The same evaluation must be made whether it be done before trial or after trial and conviction. The only difference we can see is that some factors relevant to the evaluation could not be made available for the pretrial predictive evaluation of the trial judge without prejudice to the defendant (e.g., the defendant's prior criminal record). We find no merit in this contention of defendant.

As a related matter, defendant also contends that the predictive evaluation requires the trial court to foreclose itself from using the full range of sentencing options which the legislature intended it to have after conviction. We see no merit in this contention either because, in its predictive evaluation, the trial court is actually exercising the full range of its legislatively afforded sentencing options by discarding some of those options in its search for the most appropriate sentencing alternative.

Defendant's third contention is that he had an Illinois statutory right to appointed counsel which was afforded to him by two specific Illinois

statutes, which statutory right was not knowingly and intelligently waived by him for want of any advisement by the court to defendant that defendant had such a statutory right to appointed counsel. The two relevant statutes are sections 109—1(b)(2) and 113—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, pars. 109—1(b)(2) and 113—3). In relevant part, section 109—1(b)(2) is as follows:

"(b) The judge shall:

\* \* \*

(2) Advise the defendant of his right to counsel and if [defendant is] indigent shall appoint a public defender or licensed attorney at law of this State to represent him in accordance with provisions of Section 113—3 of the Code."

Again, in relevant part, section 113—3 is as follows:

"(a) Every person charged with an offense shall be allowed counsel before pleading to the charge. If the defendant desires counsel and has been unable to obtain same before arraignment the court shall recess court or continue the cause for a reasonable time to permit defendant to obtain counsel and consult with him before pleading to the charge.

(b) In all cases, except where the penalty is a fine only, if the court determines that the defendant is indigent and desires counsel, the Public Defender shall be appointed as counsel.

\* \* \*"

If we decide that either of the above statutory provisions creates a statutory right to appointed counsel in defendant, then the issue of whether he waived that right knowingly and intelligently will become relevant. On that issue of waiver of a right to counsel, Supreme Court Rule 401(a)(3) (which became effective on 1 September 1970) becomes applicable. (Ill. Rev. Stat. 1971, ch. 110A, par. 401(a)(3).) The said Supreme Court rule reads as follows:

"(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of a crime punishable by imprisonment in the penitentiary without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

\* \* \*

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." [4]

---

[4] The phrase "in the penitentiary" was deleted by an amendment effective 1 September 1974. The Committee Comments relating to this amendment state that the amendment was intended to conform the rule to the 1972 *Argersinger* decision.

Defendant advances three specific subcontentions:

    (a) In violation of the provisions of section 109—1(b)(2), the judge, as a preliminary hearing judge, neither advised defendant of his right to counsel nor appointed counsel for him as an indigent, in accord with the provisions of section 113—3;

    (b) In violation of section 113—3(b), the judge, as the arraignment judge, did not appoint the public defender to represent him as an indigent before he was required to plead to the charge;

    (c) He had not knowingly and intelligently waived his right to counsel because he had not been advised of that right as required by section 109—1(b)(2) and by Supreme Court rule 401(a)(3).

As a preliminary matter in reviewing these three subcontentions, we note that the State has taken the position that the transcript of proceedings on 31 January 1972 does not reflect the fact that there had been any preliminary hearing on that date; if so, of course, section 109—1(b)(2) would not be applicable. But the transcript can reasonably be construed as showing that the proceeding on that date began as a preliminary hearing on the issue of probable cause to prosecute for the purpose of permitting the complainant to file his complaint instanter. This construction is confirmed by the judgment order of the court entered at the close of that proceeding. The first portion of that judgment order expressly recites that William Bray presents his complaint under oath and moves the court that he be granted leave to file it instanter; that the court, having examined the complaint and having examined William Bray under oath, and being satisfied that there is probable cause for filing the complaint, grants leave to file it instanter. On that state of the record, we find that there was in fact a preliminary hearing on 31 January 1972.

We deal first with defendant's contention that, as an indigent, he had a statutory right to appointed counsel. Defendant first points to section 109—1(b)(2) of the Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 109—1(b)(2)) relating to preliminary examination. But the right to appointed counsel referred to therein is a right "in accord with the provisions of Sec. 113—3 of the Code." In *People v. Bonner* (1967), 37 Ill. 2d 553, 229 N.E.2d 527, *cert. denied,* 392 U.S. 910, 20 L. Ed. 2d 1368, 88 S. Ct. 2067, our Supreme Court construed section 109—1(b)(2) as referring to the right to counsel at arraignment created by section 113—3, and held that section 109—1(b)(2) did not create any statutory right to counsel at the preliminary hearing.[5] Hence, the only relevant

_____

[5] In *Bonner*, the defendant was contending that section 109—1(b)(2) created in him a right to appointed counsel at his preliminary hearing on probable cause to prosecute him for a felony. Employing a policy of strict literal construction, the

statute dealing with the creation or existence of a *statutory* right to appointed counsel in an indigent defendant is section 113—3(b) dealing with the existence of a right to appointed counsel at or prior to arraignment (and presumably thereafter at trial), with the appointment to be made by the arraignment judge or, upon earlier application and a showing of indigency, by the preliminary hearing judge.

Turning, then, to section 113—3(b), we see immediately that the instant defendant faces a problem in demonstrating that the paragraph is applicable to him, owing to the express exception from "all cases" of cases "where the penalty is a fine only." In an attempt to meet that problem, defendant contends that the exception should be construed to read "except where the offense is punishable by a fine only." This is the narrow critical issue as to the existence of a right to appointed counsel in the instant indigent defendant. Defendant purports to find some support for his suggested construction in *People v. Bailey,* where the court said:

> "Although we do not decide the issue in this case, it seems to us that based on practical and legal consideration, the better policy in misdemeanor cases would be for the court to comply with Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, par. 402), where the offense charged is punishable by imprisonment." (12 Ill. App. 3d 779, 782.)

But we can see no persuasive analogy whatever between the above-quoted language and the proper construction of the language of the statutory exception here involved.

On the other hand, the State, in urging a strict literal construction of the language of that statutory exception, relies on *People v. Dupree* (1969), 42 Ill. 2d 249, 246 N.E.2d 285. But *Dupree* does not deal with the statutory exception at all. It is, however, a case manifesting a policy

Supreme Court held that the said statutory provision did not create any such right to appointed counsel at the preliminary hearing, but only at arraignment because of the clause "in accord with the provisions of Sec. 113—3 of this Code." The court also held that the defendant had no constitutional right to appointed counsel at his preliminary hearing because the preliminary hearing was not a critical stage in the criminal proceeding. This latter holding was subsequently overruled by the decision of the United States Supreme Court in *Coleman v. Alabama* (1970), 399 U.S. 1, 26 L. Ed. 387, 90 S. Ct. 1999. Hence, an indigent defendant being prosecuted for a felony now has a constitutional right to appointed counsel at his preliminary hearing. *People v. Adams* (1970), 46 Ill. 2d 200, 263 N.E.2d 490, *aff'd sub nom., Adams v. Illinois,* 405 U.S. 278, 31 L. Ed. 2d 202, 92 S. Ct. 916. But the instant defendant was being prosecuted for a misdemeanor and, upon conviction, was then in fact sentenced to the payment of a small fine only. Since we have already declined herein to extend *Argersinger* to cover that situation even in respect of the defendant's right to trial counsel, it follows *a fortiori* that we must decline to extend *Argersinger* to create a constitutional right in the instant indigent defendant to appointed counsel at the preliminary examination.

of strict literal construction of section 113—3. In order, therefore, to implement that policy of strict construction, we hold that the language of the express exception in section 113—3(b) must be read literally and cannot be given the construction sought by defendant. Hence, we hold that defendant as an indigent had no statutory right to appointed counsel at arraignment because his penalty was a fine only so that he fell within the express exception in section 113—3(b).

Since we have concluded that defendant as an indigent had neither a statutory nor a constitutional right to appointed counsel either at his preliminary hearing or at his arraignment or at his trial, it is unnecessary for us to consider whether or not he waived any such right.

For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

STAMOS, P. J., concurs.

Mr. JUSTICE LEIGHTON, dissenting:

I believe that the right of an accused to be told he can have counsel to assist him in his defense, and if he is indigent, that one will be appointed for him, is so important that judges should not engage in nice calculations about when that right should be enjoyed. Compare *Glasser v. United States* (1941), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, 467; *People v. Noble,* 42 Ill. 2d 425, 248 N.E.2d 96.

In this case, defendant appeared in the trial court for a preliminary hearing on a theft charge. By the laws of this State, the judge was required to tell him that he had the right to counsel. (Ill. Rev. Stat. 1971, ch. 38, par. 109—1(b)(2); Supreme Court Rule 401, Ill. Rev. Stat. 1971, ch. 110A, par. 401.) It has been held that this right exists whether or not the accused is indigent. (See *People v. Manikas,* 87 Ill. App. 2d 227, 230 N.E.2d 577; compare *Alexander v. City of Anchorage* (Alas. 1971), 490 P.2d 910.) Furthermore, it is the law of this State that if an accused, without being advised of his right to counsel, is subjected to a trial for which he can be incarcerated, the judgment entered in that proceeding will be set aside. *People v. Fletcher,* 74 Ill. App. 2d 387, 220 N.E.2d 70 (abstract opinion); compare *People v. McKenzie,* 89 Ill. App. 2d 157, 231 N.E.2d 702.

The record before us clearly shows that although defendant was in court for a preliminary hearing and then went to trial, he was not advised of his right to counsel. Defendant was charged with theft, an offense not punishable by fine only, (Ill. Rev. Stat. 1971, ch. 38, par. 16—1) and

the State concedes that he was an indigent person when he appeared in the trial court. Accordingly, he should have been advised of his right to counsel.

For these reasons, I vote to reverse this judgment and remand it for a new trial in which this defendant's right to counsel will be preserved and protected. Therefore, I respectfully dissent.